**SO ORDERED.**

**SIGNED this 22 day of September, 2014.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### GREENVILLE DIVISION

IN RE:

RONALD EARL LAWRENCE,  CHAPTER 7
 CASE NUMBER: 13-02187-8-RDD
 DEBTOR.

---

DEBORAH J. COBLE,  ADVERSARY PROCEEDING
SCOTTIE A. COBLE,  NUMBER: 13-00108-8-RDD

 PLAINTIFFS,

 v.

RONALD EARL LAWRENCE,

 DEFENDANT.


# ORDER

Pending before the Court is the pro se complaint initiating this adversary proceeding filed by Deborah J. Coble and Scottie A. Coble (the "Plaintiffs") on June 24, 2013 and the Motion to Dismiss this adversary proceeding for failure to state a claim pursuant to Rule 12(b)(6) filed by

Ronald Earl Lawrence (the "Defendant") on August 1, 2013.  The Court conducted a hearing on August 28, 2014, in Greenville, North Carolina to consider this adversary proceeding.

## FINDINGS OF FACT

On April 18, 2009, Scottie A. Coble, individually, and the Defendant, as Managing Member of NC Golf Group, LLC[1], executed a document entitled "Agreement for Lifetime Membership to Mill Run Golf Club" (the "Agreement") whereby Mr. Coble purchased a lifetime membership to Mill Run Golf Club for the sum of $15,000.00.  Mr. Coble purchased the lifetime membership after attending a community presentation put on by the Defendant where the Defendant offered to sell lifetime memberships ranging in price from $10,000.00 to $15,000.00 based on the purchaser's age. The Agreement provides that the payment of $15,000.00 shall entitle a "[m]ember to a lifetime membership in Mill Run Golf Club together with the privileges as hereinafter set out." The lifetime membership allowed the Plaintiffs unlimited play at the Mill Run Golf Course, use of golf carts, USGA handicap and unlimited use of the driving range.  The Agreement further provides the member may transfer his membership one time provided that said transfer must occur within ten years of the date stated on the certificate.  Pursuant to the Agreement, Mr. Coble was issued a Certificate of Lifetime Membership signed by the Defendant on behalf of NC Golf Group, LLC, on March 24, 2010, evidencing the lifetime membership and providing "[t]his Certificate of Lifetime Membership shall entitle the above Member, the Member's spouse and any child or step-child of Member under the age of twenty-one (21) to receive golf privileges at Mill Run Golf Club during the life of said Member at no cost other than the price stated herein."

---

[1] Pursuant to the Schedules filed in the Defendant's bankruptcy case, the Defendant served as an officer of Mill Run Golf Course, LLC and formerly did business as NC Golf Group, LLC and as Mill Run Golf Club.

The Defendant sold approximately eleven lifetime memberships pursuant to the same terms as set forth above ranging in prices from $5,000.00 to $15,000.00. NC Golf Group, LLC subsequently encountered financial difficulties resulting in the foreclosure of the Mill Run Golf Club. The foreclosure sale took place on March 4, 2013. The new owner, Eagle Creek Golf, discovered that the lifetime memberships were never attached to the golf course's deed. Eagle Creek Golf refused to honor the lifetime golf memberships, but did offer the Plaintiffs three years of free golf with use of a golf cart and three years with free golf fees only.

On April 4, 2013, the Defendant filed a voluntary petition under Chapter 7 of the Bankruptcy Code. The Plaintiffs were not scheduled as creditors within the Defendant's bankruptcy petition and did not receive notice of the bankruptcy filing. On June 18, 2013, Mr. Coble filed a document requesting to receive notices in the case.[2]

The Plaintiffs are pro se and commenced this adversary proceeding on June 24, 2013 with the filing of a letter form complaint[3] (the "Complaint") against the Defendant. The Plaintiffs attached

---

[2] As stated in the Complaint, the Plaintiffs sent a complaint to the Professional Golf Association of America setting forth their concerns and also sought criminal charges against the Defendant through the "NC State 'white collar' crime unit."  Plaintiffs state they were not informed that the Defendant had filed bankruptcy until they were contacted by the County of Currituck Sheriff Department.  Plaintiffs allege they have since been informed by the "NC State 'white collar' crime unit" that it was unable to continue any investigation into the matter because of the bankruptcy filing.

[3] The Complaint states as follows:

I am writing asking that the Bankruptcy Case that Ronald Lawrence filed #13-02187 be dismissed/set aside due to fraud based on the following:

Mr. Ronald Lawrence sold approximately 11 lifetime memberships on the basis that we were attached to the property of Mill Run and we would have "lifetime" golf. We along with approximately 11 other people paid Mr. Ronald Lawrence for lifetime memberships ranging from $15,000 to $5,000. We paid combined more than $100,000 to him. There is

3

five documents to the Complaint as follows: (1) a letter Mrs. Coble sent to the Chapter 7 Trustee; (2) a letter Mr. Coble sent to The PGA of America; (3) a news article published on April 6, 2013 by the Daily Advance; (4) the Agreement; and (5) the Certificate of Lifetime Membership.  Pursuant to the Complaint, the Plaintiffs request that the Court dismiss the Defendant's bankruptcy case based on allegations of fraud.  The Plaintiffs allege that: (1) at the Defendant's community presentation he orally represented to prospective buyers that the lifetime memberships would be passed along

> even 1 person who paid him a lifetime membership 3 days before he closed on the golf course.
>
> We never knew that he never attached us to the deed as agreed upon in the paperwork he gave all of us.
>
> We found this us [*sic*] when the property was sold and the new owners had a meeting with us and informed us of that.
>
> We filed a formal complaint with the PGA and the Currituck Sheriff's Dept along with the other lifetime members.
>
> Currently the NC State "white collar" crime unit is investigating this case.
>
> Through the County of Currituck Sherriff [*sic*] Dept we were informed that Mr. Ronald Lawrence filed for bankruptcy protection on April 4, 2013 and a creditor meeting was held on April 30, 2013. None of us were ever informed of this so that we could file creditor paperwork, object etc.
>
> Mr. Ronald Lawrence knew we were seeking relief/criminal charges as he had been contacted by the Sherriff's [*sic*] Dept, And [*sic*] the Daily Advance newspaper before he filed for bankruptcy.
>
> I sent a certified letter to the court on June 14, 2013 and also a letter to Mr. Steven L. Beaman, PLLC at Fax # 252 243 5174 stating we wanted to be added as a creditor.
>
> I am enclosing all the documents that I have along with the newspaper article that ran in the daily advance on Sunday April 6, 2013. The Currituck County Sherriff's [*sic*] Dept has an open case
>
> I am asking the court to dismiss or set aside Mr. Ronald Lawrence application for bankruptcy based on he did not list any of us on as a creditor on his bankruptcy case.

with the golf course's deed; and (2) that the Defendant misrepresented his financial condition during the presentation. The Plaintiffs contend they would have never purchased the lifetime golf memberships if the would have known their memberships would not be passed along with the golf course's deed.            On August 1, 2013, the Defendant filed the Answer, Motions and Affirmative Defenses. The Defendant requests that the Complaint be dismissed for failure to state a claim upon which relief may be issued pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. The Defendant contends that the Plaintiffs have not alleged sufficient clear and concise facts in order to give notice to the Defendant of the claim or claims against him. Defendant contends that the Plaintiffs' claim is based on a lifetime interest in real property and falls within North Carolina's Statute of Frauds (G.S. § 22-2). Defendant notes that an agreement that falls within the statute of frauds can only be modified in writing and the Agreement does not mention the lifetime membership attaching to the deed of the golf course. The Defendant contends that the Plaintiffs' allegation that the Defendant orally represented the lifetime membership interest would transfer with the deed, was not reduced to writing and then signed by the parties. In addition, the Defendant contends he never deceived the Plaintiffs as to their lifetime membership and never promised them that they would be recorded on the deed to the golf course. The Defendant points out that the Mill Run Golf Course was secured by a deed of trust and the creditor sold the land upon which the golf course exists at a foreclosure sale. Accordingly, the Defendant contends he had no power or ability to transfer lifetime membership rights through the foreclosure sale.

      The parties knowingly and willfully consented on the record and authorized the bankruptcy court to hear all matters raised in the pleadings and enter a final judgment.

**DISCUSSION**

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). The complaint must include "enough facts to state a claim to relief that is plausible on its face." *Angell v. Ber Care, Inc.* (*In re Caremerica, Inc.*) 409 B.R. 737, 745 (Bankr. E.D.N.C. July 23, 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed. 2d 929 (2007)). There are "two working principles" upon which the heightened pleading standard rests:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.

*Id.* at 747 (quoting *Iqbal*, at 1949).

The Plaintiffs are pro se. "A pro se complaint however, inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotations and citations omitted); Fed. Rule Civ. Proc. 8(e) ("pleadings shall be so construed as to do justice"). There are, however, limits to these standards. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088, 106 S. Ct. 1475, 89 L.Ed.2d 729 (1986). The Court does not have to "conjure up questions never squarely presented to [it]." *Id.* Discharge provisions will be strictly construed against the objector and liberally construed in favor of the debtor. *Ferguson v. Joyce* (*In re Joyce*), 2009 WL 1606424 at *2 (Bankr. M.D.N.C. 2009) (citations omitted).

The Plaintiffs allege that prior to entering into the Agreement, the Defendant falsely represented to the Plaintiffs that the lifetime membership would be attached to the deed of the golf course and that they would have a lifetime golf membership[4]. The Plaintiffs contend these remarks constitute fraud as the Plaintiffs paid $15,000.00 to the Defendant for the lifetime golf membership and the Defendant failed to deliver free lifetime golf. The Court will treat this claim as an action pursuant to 11 U.S.C. § 523(a)(2)(A).

Section 523(a)(2)(A) of the Code provides:

A discharge . . . of this title does not discharge an individual debtor from any debt—

(2) for money, property, services . . . , to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. 11 U.S.C. § 523(a)(2)(A).

Proof of actual fraud under subsection (2)(A) requires satisfaction of the elements of common law fraud "(1) false representation, (2) knowledge that the representation was false, (3) intent to deceive, (4) justifiable reliance on the representation, and (5) proximate cause of damages". *In re Hill*, 425 B.R. 766, 777 (Bankr. W.D.N.C. 2010) (citing *Colombo Bank v. Sharp* (*In re Sharp*), 340 Fed.Appx. 899, 901 (4th Cir. 2009). Proof of fraudulent misrepresentation under subsection (2)(A) requires the Plaintiffs to establish that the debt was incurred through "(1) a fraudulent

---

[4]The Defendant alleges the Statute of Frauds as a defense. A motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). "But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This principle only applies, however, if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'" *Id.* (citing *Richmond, Fredericksburg & Potomac R.R. v. Forst,* 4 F.3d 244, 250 (4th Cir.1993) (emphasis added); *accord Desser v. Woods,* 266 Md. 696, 296 A.2d 586, 591 (1972).

misrepresentation; (2) which induced the Plaintiffs to act or refrain from acting; (3) which caused harm to the Plaintiffs; and (4) upon which the Plaintiffs justifiably relied." *In re Hill*, 425 B.R. 766, 775 (Bankr. W.D.N.C. 2010)

The Supreme Court has held that "[a]lthough the plaintiff's reliance on the misrepresentation must be justifiable . . . this does mean that his conduct must confirm to the standard of the reasonable man." *Field v. Mans*, 516 U.S. 59, 73 (1995) (internal quotations omitted). While justifiable reliance "does not typically give rise to a duty to investigate, a creditor is not entitled to 'blindly rel[y] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'" *Id.* (Citation omitted). Accordingly a plaintiff cannot ignore "red flags" and satisfy the justifiable reliance standard. *Id.* (Citation omitted). "To prove justifiable reliance, a creditor must have shown some degree of diligence . . . ." *In re Robinson*, 340 B.R. 316, 348 (Bankr. E.D. Va. 2006) (citing *Guar. Residential Lending, Inc. v. Koep* (*In re Koep*), 334 B.R. 364, 372 (Bankr.D.Md.2005) (quoting *Boyd v. Loignon* (*In re Loignon*), 308 B.R. 243, 249 (Bankr.M.D.N.C.2004).

The Plaintiffs seek to establish that they justifiably relied on the Defendant's oral representation that their lifetime membership interest would be added to the deed of the golf course, when this representation was not incorporated into the later written contract. The Court finds that the Plaintiffs' claim for fraud fails. The complaint does not allege that the Plaintiffs actually or justifiably relied on the representations allegedly made by the Defendant. As to this allegation, the Complaint states the Defendant "sold approximately 11 lifetime memberships on the basis that we were attached to the property of Mill Run and we would have "lifetime" golf. . . We never knew that he never attached us to the deed as agreed upon the paperwork he gave all of us." The Agreement

8

is not lengthy and consists of only four pages and eleven sections. No where in the Agreement does it state the Plaintiffs' lifetime membership would be transferred with the future sale of the golf course. Any reliance on the Defendant's representations made during the community presentation would not have been justified in light of the latter written Agreement. The Agreement was sufficient to put the Plaintiffs on notice that the lifetime membership would not be passed along with the golf course's deed. Even construing the facts in the light most favorable to the Plaintiffs, the complaint fails to establish that they justifiably relied on any representations made by the Defendant, because the terms of the lifetime membership were unambiguously expressed in the Agreement, which the Plaintiffs had a duty to read. *Baggett v. Summerlin Ins. & Realty, Inc.*, 545 S.E. 2d 462, 468 (Tyson, J., dissenting), *rev'd for reasons stated in the dissent*, 354 N.C. 347, 554 S.E.2d 336 (2001) (noting that Persons entering contracts . . . have a duty to read them and ordinarily are charged with knowledge of their contents.")

Here, the Court finds the facts clearly support that the Plaintiffs did not justifiably rely on the Defendant's representations. Accordingly, the Defendant's motion to dismiss the above claim is granted.

As to the Plaintiffs' claim that the Defendant misrepresented his financial condition during the presentation, the Court denies the Defendant's motion to dismiss as the Plaintiffs did sufficiently allege for purposes of surviving the motion to dismiss that there were misrepresentations as to the Defendant's financial condition and but for these misrepresentations, the Plaintiffs would not have entered into the Agreement. As to this claim, the Plaintiffs presented testimony on August 28, 2014, of Mr. Coble. Mr. Coble testified that at the community presentation the Defendant stated the payments he received for the lifetime memberships were going to be used to improve the golf

course. Mr. Coble further stated the Defendant did not make any representation as to the financial condition of the golf course or as to the Defendant. According to Plaintiffs, the Defendant was hiding his financial troubles at the community presentation in 2009, because the Defendant later filed for bankruptcy in 2013.

At the conclusion of Plaintiffs' evidence, the Defendant made an oral motion for directed verdict, claiming there was no evidence for misrepresentation or fraud as to the Plaintiffs' claim that the Defendant misrepresented his financial condition to the Plaintiffs. In considering a motion for a directed verdict, the court must construe the evidence in the light most favorable to the non-moving party. *Parker v. Prudential Ins. Co. of America*, 900 F.2d 772, 776 (4th Cir. 1990). Defendant's motion for a directed verdict in a bench trial is treated as a motion for a judgment on partial findings under Rule 52(c) of the Federal Rules of Civil Procedure. *In re Vidro*, 497 B.R. 678, 685 (Bankr. E.D.N.Y. 2013) (citing Fed. R. Civ. P. 52(c)). A judgment pursuant to Fed.R.Civ.P. 52(c) "operates as a decision on the merits in favor of the moving party." *In re Earle*, 307 B.R. 276, 289 (Bankr. S.D. Ala. 2002) (citation omitted).

Based on the Plaintiffs' evidence, it does not appear any representation was made as to the Defendants' financial ability at the community meeting. Likewise, no community members posed any question to the Defendant regarding his financial condition. Additionally, the community meeting was held approximately four years prior to the Defendant filing bankruptcy and one year prior to the foreclosure of the golf course. Based on this and the evidence received at the hearing, the Defendant's oral motion for a directed verdict is **GRANTED**.

## CONCLUSION

Based on the record and the evidence received at the hearing, judgment is entered in favor of the Defendant. The Plaintiffs shall have and recover nothing of the Defendant by way of their complaint. The Clerk is directed to close this adversary proceeding.

**SO ORDERED.**

**END OF DOCUMENT**